277 N.J. Super. 162 (1994)
649 A.2d 114
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERTO MARQUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1994.
Decided November 16, 1994.
*165 Before Judges J.H. COLEMAN, DREIER and WEFING.
Edward P. Hannigan, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Hannigan, of counsel and on the brief).
Terry Bogorad, Assistant Prosecutor Passaic County, argued the cause for respondent (Ronald S. Fava, Passaic County Prosecutor, attorney; Ms. Bogorad, of counsel and on the letter brief).
The opinion of the court was delivered by WEFING, J.A.D.
Defendant was indicted for first degree kidnapping (N.J.S.A. 2C:13-1b(1) or (2)); two counts of third degree assault (N.J.S.A. 2C:12-1b(2)); third degree terroristic threats (N.J.S.A. 2C:12-3a); second degree burglary (N.J.S.A. 2C:18-2b(1) or (2)); fourth degree theft (N.J.S.A. 2C:20-3); and fourth degree contempt of court for disobeying a judicial restraining order (N.J.S.A. 2C:29-9(b)).
Following a jury trial, defendant was found guilty of false imprisonment as a lesser included offense of kidnapping; one count of simple assault as a lesser included offense of third degree assault; and acquitted on the remaining third degree assault count. He was convicted of all the remaining charges. For burglary, the trial court sentenced him to a term of ten years, and specified he would be ineligible for parole for five years. For terroristic threats, the trial court sentenced him to a consecutive term of five years and specified he would be ineligible for parole for two and one-half years. The trial court imposed a concurrent eighteen-month term for the theft conviction, merged the false imprisonment and simple assault into the burglary conviction and the contempt of court into the terroristic threats conviction. Defendant's overall term was thus fifteen years, with a seven and one-half year parole disqualifier.
*166 Defendant's convictions rested upon the events of July 27, 1990. He arrived at the home of Theresa Hussein, with whom he had an eight-month old daughter, Patricia. Theresa Hussein was not home and defendant demanded her thirteen year old daughter, Desiree Suffy, admit him so he could retrieve money which allegedly belonged to him. The girl called her mother for instructions, and then refused him entry. Defendant forced his way into the locked apartment, grabbed the baby, retreated to the bathroom and locked the two of them inside. The police and Ms. Hussein were both summoned. Defendant held them off for approximately three hours before he eventually relented and surrendered both the baby and himself. The baby was unharmed, but Ms. Hussein received a cut which required five stitches. Defendant's conviction for simple assault dealt with his actions toward his infant daughter; he was acquitted of the assault charges which dealt with his actions toward Ms. Hussein.
Defendant and Ms. Hussein had lived together for some period of time and the incident of July 27, 1990 was not the first. On February 6, 1990, they resided at a different apartment. At lunch time on that date, Ms. Hussein called home from her employment and spoke with defendant. She heard Patricia crying in the background and from her phone conversation, concluded defendant had been drinking. She left work to attend to Patricia and when she arrived home, discovered the defendant drunk and the two-month old infant lying across their bed, soaking wet from a sodden diaper. Defendant refused to let her take the baby and she left the apartment to summon the police. Defendant locked himself in the bedroom with the baby and would not let the police enter. When they kicked the door in, he threatened to slam the child against the wall and throw her on the floor.
Eventually, defendant let Ms. Hussein feed Patricia although he would not let her hold the baby. Ms. Hussein, however, grabbed the infant and the police quickly subdued and subsequently arrested defendant. This incident lasted approximately ninety minutes.
*167 Following that incident, Ms. Hussein sought and obtained a restraining order under the Prevention of Domestic Violence Act (N.J.S.A. 2C:25-17 et seq.). Defendant's action in going to Ms. Hussein's apartment on July 22, 1990 was the foundation for the charge of contempt of court.
On this appeal, defendant raises the following issues:

POINT I THE TRIAL COURTS INSTRUCTION TO THE JURY THAT A CONVICTION FOR BURGLARY COULD BE BASED UPON DEFENDANT'S DISOBEDIENCE OF THE COURT'S ORDER NOT TO ENTER HUSSEIN'S APARTMENT WAS ERROR REQUIRING REVERSAL OF HIS CONVICTION OF BURGLARY. (Not raised below).

POINT II THE PROSECUTOR'S COMMENTS IN SUMMATION CONCERNING COLLUSION BETWEEN THE DEFENDANT'S EXPERT WITNESSES AND DEFENSE COUNSEL, AS WELL AS COMMENTS TO THE EFFECT THAT THEIR TESTIMONY WAS THAT OF CHARLATANS WITH MERELY VENAL MOTIVES, PARTICULARLY IN THAT THE TRIAL JUDGE REFUSED TO GIVE A CURATIVE INSTRUCTION, DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III THE TRIAL COURT'S FAILURE TO CHARGE THE JURY CONCERNING THE DEFENDANT'S CLAIM OF RIGHT DEFENSE TO THE CHARGE OF THEFT REQUIRES REVERSAL OF HIS CONVICTIONS FOR THEFT AND BURGLARY. (Not raised below.)

POINT IV HUSSEIN'S TESTIMONY CONCERNING THE $370 CHECK WHICH SHE RECEIVED FROM THE PASSAIC COUNTY JAIL AUTHORITIES CONSTITUTED INADMISSIBLE HEARSAY SINCE ITS NECESSARY IMPORT WAS THAT DEFENDANT HAD ADMITTED BOTH THE FACT OF THEFT AND HIS GUILT OF THAT OFFENSE TO THIRD PARTIES. AS A CONSEQUENCE, HIS CONVICTIONS OF BOTH THEFT AND BURGLARY MUST BE REVERSED. (Not raised below.)

POINT V THE TRIAL COURT'S SENTENCE IS EXCESSIVE AND REPRESENTS A GROSS ABUSE OF DISCRETION.

I.
N.J.S.A. 2C:18:2a(1) defines the crime of burglary in the following manner:
"A person is guilty of burglary if, with purpose to commit an offense therein he: (1) enters a structure, or a separately secured or occupied portion thereof, unless the structure was at the time open to the public or the actor is licensed or privileged to enter[.]"
*168 Burglary is complete upon entry into a structure with the purpose of committing an offense. State v. Mangrella, 214 N.J. Super. 437, 441, 519 A.2d 926 (App.Div. 1986), certif. denied, 107 N.J. 127, 526 A.2d 194 (1987). It is sufficient for purposes of the burglary statute that the offense intended to be committed within the structure constitutes a crime of the fourth degree. State v. Williams, 229 N.J. Super. 179, 183, 550 A.2d 1298 (App.Div. 1988) (entering a structure with the intent to resist arrest and to elude the police in violation of N.J.S.A. 2C:29-2 found to constitute burglary).
In this case, the trial court explained the crime of burglary to the jury in the following manner:
A person is guilty of burglary, a crime of the second degree, if with purpose to commit an offense therein, the actor enters a structure, unless he is licensed or privileged to enter.
And if in the course of committing the offense, he purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone or, alternatively, if he is armed with a deadly weapon.
Because you can find the defendant guilty of burglary, a crime of the second degree, you must first find that the State has proved beyond a reasonable doubt all of the following elements: One, defendant entered the second-floor apartment of Theresa Hussein, located at 153 Lewis Street at the time and place charged in count five of the indictment.
Two, defendant entered the apartment without permission.
Three, defendant entered the apartment with the purpose to commit an offense therein.
And, four, the defendant did purposely, knowingly or recklessly inflict bodily injury upon Patricia Marquez and/or Theresa Hussein or he threatened to inflict bodily injury upon them or alternatively, defendant was armed with a deadly weapon.
First, the State must prove that the defendant entered the apartment without permission....
Next, the State must prove that when defendant entered the apartment, he did so with the purpose to commit any one or more of the crimes alleged in this case, including kidnapping, aggravated assault, terroristic threats, theft or contempt of court. (emphasis added)
Defendant did not object to this charge at the time it was given, but now contends it constitutes plain error. R. 2:10-3.
We are constrained to agree with defendant because under the language used by the trial court, the jury was entitled to conclude *169 that defendant's mere entry into the apartment in violation of a restraining order was itself a basis to convict him of burglary. We do not believe that the Legislature could have intended that every entry which violates a domestic violence restraining order, without other requisite elements, constitutes the crime of burglary. We are satisfied that the passage of the Prevention of Domestic Violence Act (N.J.S.A. 2C:25-17 et seq.) did not modify or alter the statutory elements for robbery contained in N.J.S.A. 2C:18-2.
The burglary statute speaks of entry "with purpose to commit an offense therein." The 1971 Commentary of the Criminal Law Revision Commission notes that the word "therein" is included within the statute "to make it clear that the mere purpose to commit criminal trespass by intrusion into the premises does not satisfy the criminal purpose requirement for burglary." This logic indicates to us that the purpose to commit contempt of court by intrusion into the premises would, similarly, not satisfy the criminal purpose requirement for burglary. We conclude that, in the context of this case, defendant could only be convicted of burglary if his purpose upon entry to Ms. Hussein's apartment was to commit a separate offense subsequent to his entry.
It is impossible to know whether the jury concluded defendant was guilty of burglary because they found he entered Theresa Hussein's apartment with the purpose to commit one of the other listed offenses, or concluded that since his entry into the apartment constituted contempt of court, he was, in consequence, guilty of burglary.
The United States Supreme Court has stated "... the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on the other, and it is impossible to tell which ground the jury selected." Yates v. United States, 354 U.S. 298, 311-312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957). The trial court's erroneous charge on the crime of burglary is fatal to the conviction. State v. Rhett, 127 N.J. 3, 8, 601 A.2d 689 (1992). Thus, his conviction for burglary must be set aside.

*170 II.
Defendant next contends that certain comments made by the prosecutor in his closing remarks were so egregious that they denied defendant his right to a fair trial.
In order to appreciate the significance of defendant's argument, it is necessary to analyze the defense put forth and the comments made. In his brief to this court, defendant framed the issue in the following manner:
It was not so much what the defendant did in the present case that was in issue, but what his state of mind was when he did it. There can be no quarrel with the contention that, in forcing his way into the apartment occupied by his paramour, Theresa Hussein, on July 27, 1990, seizing their infant daughter, Patricia, and, over a four hour period, while besieged by the Paterson police force and fire department, repeatedly threatening to end his daughter's life as well as his own, the defendant acted in an extremely irrational and bizarre manner. The principal question faced by the jury was what had impelled him to act as he did, and whether the cause of that impulse could serve legally to mitigate the degree of his criminal responsibility.
During the course of his defense, defendant presented two psychologists as expert witnesses, Dr. Frank Dyer and Dr. Frederick Rotgers. Dr. Dyer testified that, in his opinion, defendant suffered from borderline personality disorder and was in a psychotic state during the July incident. Dr. Rotgers expressed the opinion that defendant lacked the ability to act purposefully or knowingly at the time of the incident.
During the course of his closing remarks, the prosecutor stated:
The two psychiatrists  two psychologists, I am sorry, two psychologists that came in here yesterday were a joke. Absolute joke.
They were laughing.
When you consider what they had to say to you, a lot of mumbo-jumbo, they hid behind words. They couched everything in terms of words.
Several pages later, he stated:
These guys get on the scene 17 months later now, they come to the scene and all of a sudden he cannot  can't understand English.
I don't know if that's so or Dr. Rotgers figured he would get somebody else on the tab here that can bill $100 an hour for their time and services and come into court here.

*171 My friend Frank Dyer, bring him in. He can earn a couple of bucks.
Warming to his subject, the prosecutor continued:
You know what the most telling portion of this put-up job, the travesty to put on you ... do you remember that long rambling hypothetical situation Miss Kean gave both the psychologists?

It took a long time. Assume a lot of facts, assume this; assume that; assume another thing. The first  what significance is that to you? The first words literally out of both of their mouths were identical. Do you remember what they said?
Yes, I put some significance on that. Yes, he had some problems. Putting the blood on that ID card indicated to me extreme psychosis. It is like they were reading it from a script.

And it did come like later on in their testimony. It was fairly, virtually the first things out of their mouths.

Most respectfully, the first thing.
You know, if that isn't a put-up job, if that is not rehearsed, if that isn't a travesty being forced upon you, members of this jury, I don't know what is.
Defense counsel objected to these comments at the conclusion of the summation but the objection was overruled. Within its instructions, the trial court did tell the jury that the comments in summation were only the attorney's recollection of the testimony and that if the attorneys, within their summations, referred to "facts that you don't find in the evidence, of course you cannot consider what counsel have said."
While prosecutors are "entitled to sum up the State's case graphically and forcefully," State v. Johnson, 31 N.J. 489, 510-511, 158 A.2d 11 (1960), they must never forget their unique role in our criminal justice system; their task is not to obtain convictions but to see that justice is done. State v. Farrell, 61 N.J. 99, 104, 293 A.2d 176 (1972). While a prosecutor may make remarks that constitute legitimate inferences from the testimony presented, State v. Perry, 65 N.J. 45, 48, 319 A.2d 474 (1974), he may not go beyond that testimony. State v. Farrell, supra. Nor may he engage in unwarranted attacks on defense counsel. "It is improper for a prosecutor during summation to demean the role of defense counsel or cast aspersions on a lawyer's motives.... It is likewise improper for a prosecutor, without support in the evidence, to accuse a defendant of conspiring with his counsel to *172 conceal and distort the truth." State v. Darrian, 255 N.J. Super. 435, 457, 605 A.2d 716 (App.Div.), certif. denied, 130 N.J. 13, 611 A.2d 651 (1992); see also, State v. Acker, 265 N.J. Super. 351, 627 A.2d 170 (App.Div.), certif. denied, 134 N.J. 485, 634 A.2d 530 (1993).
Here, the prosecutor suggested to the jury, without any support in the record, that Dr. Rotgers requested that Dr. Dyer become involved in this matter solely because Dr. Dyer was his friend and Rotgers wanted to provide Dr. Dyer the opportunity to earn $100 per hour. In truth, the record is entirely silent about whether these two gentlemen even knew each other.
Furthermore, the prosecutor told the jury that defendant's expert witnesses were engaged in a "put-up job," were attempting to force a "travesty" and that their testimony had been scripted for them, presumably by defense counsel. These attacks were improper, without support in the record and wholly unjustified. State v. Rose, 112 N.J. 454, 548 A.2d 1058 (1988). Not only were they without support in the record, they mischaracterized the record; nowhere in their testimony did Dr. Dyer and Dr. Rotgers speak identically.
The remarks were, moreover, designed to destroy defendant's psychological defense. The prosecutor was clearly entitled to criticize that defense and point out reasons to the jury, from the record, why they should not be persuaded by it. He was not, however, entitled to tell the jury that defendant's attorney had prepared a script for the witnesses' testimony and that defense counsel presented a "put-up" defense.
This court has remarked that "instances of prosecutorial excesses in the course of summation seem to come to this court with numbing frequency." State v. Watson, 224 N.J. Super. 354, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566 (1988). We have, however, steadfastly adhered to the view that in order to warrant reversal, "the improper conduct must have resulted in *173 substantial prejudice to the defendant's fundamental right to have a jury fairly assess the persuasiveness of his case." State v. Darrian, 255 N.J. Super. at 453, 605 A.2d 716. We have done so out of our recognition that "public security should not suffer because of a prosecutor's blunder." State v. Watson, 224 N.J. Super. at 362, 540 A.2d 875. We are deeply troubled by the prosecutor's improper remarks but we note this jury acquitted defendant of kidnapping, as well as of aggravated assault. We are thus unable to conclude that these remarks substantially prejudiced defendant's right to have the jury fairly evaluate this case and decline to reverse his convictions on this ground.

III.
Defendant also challenges his conviction for theft on two grounds, the adequacy of the court's instructions and the sufficiency of the testimony presented on the issue. We have carefully reviewed the record in this matter and we are clearly satisfied that there was insufficient testimony presented to the jury on the issue of theft to justify conviction. Quite simply, no witness at the trial ever testified that a theft occurred. It is thus unnecessary to address the issue of the trial court's instructions on that offense, to which no objection was raised at the time of trial.

IV.
Defendant's final argument challenges the sentence imposed upon him. In light of our conclusion that defendant's convictions for burglary and theft must be reversed, his challenge to his sentences for those crimes is moot. In the event, however, that the State elects to retry defendant, we remind the trial court of the necessity of clearly stating on the record the reasons for determining to impose consecutive, as opposed to concurrent, terms. State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
Defendant's other convictions remain undisturbed, however. At sentencing, the trial court merged the convictions for false imprisonment *174 and simple assault into that for burglary. The matter must therefore be remanded to the trial court so that defendant may be resentenced for those offenses. We can perceive no error by the trial court in its decision that defendant should be sentenced to a term of five years, with a parole disqualifier of two and one-half years, for the terroristic threats conviction.
Defendant's convictions for burglary and theft are reversed; those for false imprisonment, simple assault, terroristic threats and contempt of court are affirmed. The matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.