850 A.2d 553 (2004)
370 N.J. Super. 49
STATE of New Jersey, Plaintiff-Respondent,
v.
Morillo F. MARINEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 2004.
Decided June 16, 2004.
*554 Edward A. Jerejian, Orange, argued the cause for appellant (Jerejian & Jerejian, attorneys; Mr. Jerejian and Rita T. Jerejian, of counsel and on the brief).
Catherine A. Foddai, Assistant Prosecutor, argued the cause for respondent *555 (John L. Molinelli, Bergen County Prosecutor, attorney; Ms. Foddai, of counsel and on the brief).
Before Judges PRESSLER, PARKER and R.B. COLEMAN.
The opinion of the court was delivered by
PRESSLER, P.J.A.D. (retired and temporarily assigned on recall).
Following a trial by jury, defendant Morillo F. Marinez was convicted of a variety of related charges of aggravated sexual assault and second-degree kidnapping, all arising from a single episode. We affirm the guilty verdicts but modify the base term imposed on the aggravated sexual assault charge because of our consideration of the effect of the real-time consequences of the No Early Release Act (NERA). N.J.S.A. 2C:43-7.2. We also remand for reconsideration as to whether the sentences imposed should all run concurrently.
Defendant was charged in a thirteen-count indictment with first-degree kidnapping, N.J.S.A. 2C:13-1b (Count One); three counts of first-degree aggravated sexual assault during the commission of kidnapping, N.J.S.A. 2C:14-2a(3), each count charging a different form of sexual penetration (Counts Two, Three and Four); three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(5), each count charging a form of sexual penetration charged in the assault-during-kidnapping charges (Counts Five, Six and Seven); and six third-degree counts of aggravated criminal sexual contact, N.J.S.A. 2C:14-3a, charging conduct committed during the charged aggravated sexual assaults. The jury found defendant guilty of all charges except first-degree kidnapping, finding him instead guilty of second-degree kidnapping. The judge merged all thirteen convictions into three, that is, the conviction of second-degree kidnapping, one conviction of first-degree aggravated sexual assault, and one conviction of aggravated sexual contact. The judge then sentenced defendant on the first-degree conviction to an eighteen-year prison term subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act (NERA), a consecutive five-year term on the second-degree kidnapping conviction, and a concurrent five-year term on the third-degree sexual contact conviction. Defendant appeals, and we affirm the finding of guilt but, in the exercise of our original jurisdiction pursuant to R. 2:10-5, we modify the sentence imposed on the first-degree conviction and remand for reconsideration of the consecutive sentencing.
In challenging the judgment of conviction, defendant raises the following issues:
I. THE PROSECUTOR'S COMMENTS DURING HER OPENING DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.
II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S REQUEST FOR A MISTRIAL.
III. DEFENDANT'S SENTENCE UNDER N.E.R.A. WAS IMPROPER.
IV. THE JURY VERDICT ON THE KIDNAPPING CHARGE WAS AGAINST THE WEIGHT OF THE EVIDENCE. (Not Raised Below)
V. THE TRIAL COURT ERRED BY SENTENCING DEFENDANT TO A CONSECUTIVE TERM ON THE COUNT FIVE AGGRAVATED SEXUAL ASSAULT CONVICTION.
VI. DEFENDANT'S SENTENCE WAS CRUEL AND UNUSUAL PUNISHMENT. *556 Having considered these issues in the light of the record, the applicable law, and the arguments of counsel, we are satisfied that defendant's challenges to the jury's verdict are without sufficient merit to warrant disposition by written opinion. R. 2:11-3(e)(2). We add, however, the following comments.
The complaining witness was a new employee of a bar in the Bronx managed by defendant's brother and at which defendant worked as a disc jockey. The story she told was that defendant had offered to drive her home after her shift and she accepted his offer. There was another man in the car when she got in, co-defendant Forti, who has never been located or prosecuted. Instead of driving her home, defendant drove across the George Washington Bridge to a motel. He and Forti then forced her into a motel room, and both of them sexually assaulted her, Forti apparently being the instigator and prime mover. They then drove her back over the bridge, she made her way home, showered and called the police. Her physical injuries were consistent with the events she related.
Defendant's version was very different. According to him, the complainant had told him that Forti had offered her $500 for sex and offered him $100 if he would drive them to a hotel. He did so, he himself did not in any way assault her, Forti refused to pay her, and then he, defendant, took her back home. His version was substantially corroborated by another employee, the complaining witness's roommate, in whom she had confided respecting her plans when her shift was completed.
The jury evidently accepted the complaining witness's testimony, rejecting the defense version, as it was free to do.
The remark made by the prosecutor in her opening statement which defendant characterizes as prosecutorial misconduct followed her observation that the facts she would prove were unusual. She then said "I mean how could something like this happen in Bergen County...." Defendant moved for a mistrial based on that remark after the opening statement was completed, and the motion was denied. It is defendant's position then, and his argument to us, that the statement improperly appealed to the jury's passion and emotion.
We reject the argument. It is well-settled that whether objected to or not, prosecutorial misconduct constitutes grounds for reversal of a conviction only if so egregious as to have deprived the defendant of a fair trial. See, e.g., State v. Josephs, 174 N.J. 44, 124, 803 A.2d 1074 (2002); State v. Koskovich, 168 N.J. 448, 489, 534, 776 A.2d 144 (2001); State v. Smith, 167 N.J. 158, 181-182, 185, 770 A.2d 255 (2001). We see nothing in the remark in question, particularly in the context of the opening statement as a whole and considering the proofs the prosecutor was prepared to offer, that could possibly be characterized as egregious. In our view, it was a fleeting, essentially innocuous reference that did not have the capacity to unduly prejudice defendant or in any way distract the jury from its proper focus on the evidence.
We find equally without merit defendant's claim that he was entitled to a mistrial by reason of the prosecutor's discovery violation. During her direct examination, the complaining witness testified that she had been taken to the precinct station in the Bronx just after defendant's arrest for identification purposes. Defense counsel had not been advised of this out-of-court identification. We have no doubt that he should have been. However, we are also satisfied that in order for the discovery violation to have been remediable, *557 the undisclosed information would have had to have been material to defendant's opportunity to defend himself, in which case the court would have had the discretion to fashion an appropriate remedy, including a continuance or delay of the trial or a barring of the use of evidence, or such other "order as it deems appropriate." R. 3:13-3(g). The point here is that the Bronx lineup was not material to the defense because identification was never in issue. The complaining witness knew the defendant well; he was no stranger to her. Under these circumstances, the purpose of the lineup was to assure the police that they had arrested the person who had already been specifically identified by the complainant rather than to determine if the complainant could identify a suspect. There was, consequently, no prejudice to defendant in the discovery violation.
Finally, defendant asserts that the kidnapping verdict was against the weight of the evidence. That argument is procedurally barred because defendant failed to make a motion for a new trial based on that ground as required by R. 2:10-1. See, e.g., State v. DiFerdinando, 345 N.J.Super. 382, 399, 785 A.2d 440 (App.Div.2001); certif. denied, 171 N.J. 338, 793 A.2d 717 (2002). We have nevertheless opted to consider it, and we think it clear that the complaining witness's testimony provided ample ground for a kidnapping verdict.
We have difficulty however with the aggregate sentence, a base term of 23 years subject to 15.3 years of parole ineligibility. At the outset, we have no doubt, contrary to defendant's contention, that a NERA sentence was properly imposed. The crimes charged here were subject to NERA prior to its amendment by L. 2001. c. 129. In its original version, NERA applied to first and second-degree crimes defined therein as violent. Aggravated sexual assault was a NERA crime if attended by serious bodily injury, or use or threatened use of a deadly weapon, or physical force or the threat of physical force. See, e.g., State v. Thomas, 322 N.J.Super. 512, 519-520, 731 A.2d 532 (App.Div.), aff'd, 166 N.J. 560, 767 A.2d 459 (2001). Moreover, it was also well-settled that if the NERA predicate fact, here physical force, did not constitute an element of the offense of which the jury found the defendant guilty, the jury was required, on special instruction, to find whether the predicate fact was present or not. State v. Johnson, 166 N.J. 523, 544, 766 A.2d 1126 (2001). And see the 2001 amendment of R. 3:19-1(b) requiring a special verdict of NERA applicability. The jury here was properly instructed that it should consider whether the sexual assault was a violent crime in that it was accompanied by the use of physical force. We see no deviation from appropriate procedure or required findings.
Although we are satisfied that NERA was properly applied to the sentence and while we reject defendant's contention that the sentence itself or the mandatory post-release five-year probationary period is cruel and unusual, we are concerned about the quantum of the sentence and the consecutive sentencing for the kidnapping and the sexual assault.
We preface our consideration of the eighteen-year base term for first-degree aggravated sexual assault with the observation that one of the consequences of NERA has been its discernible effect on sentencing disparity. After reviewing NERA sentencing during the seven years since the adoption of the original statute, it is this court's observation that the dramatic real-time consequences of NERA have had both a substantial and inconsistent effect on the way trial judges exercise their sentencing discretion. That is to say, *558 some trial judges focus on the real-time consequences in fashioning the NERA sentence, thus sentencing the defendant to the bottom or near the bottom of the range for the degree of crime in question, and some even sentencing defendant to a sentence for a crime one degree lower in accordance with N.J.S.A. 2C:44-1f(2) where the combination of defendant's personal circumstances and the circumstances attending the crime compel the sense that the sentence would otherwise be too severe. Other judges sentence the defendant to the presumptive term even where the aggravating factors might legitimately be found to have outweighed the mitigating factors, apparently taking into account that the severity of NERA sentencing compensates for the outweighing aggravating factors. And rarely, but occasionally, as here, the NERA consequences seem not to be considered at all and a base term exceeding the presumptive subject to NERA is imposed. When this court deals with a forty-case sentencing calendar pursuant to R. 2:9-11, in which defendants convicted of the same crime are appealing from an intolerably wide range of sentences, the resultant disparity created by NERA appears in sharp focus and the counter-effect of NERA on the Code's original premise of sentencing uniformity becomes strikingly clear.
In reviewing the eighteen-year base term here, we must, therefore, be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence. We consider the judge's evaluation of the aggravating and mitigating factors in that light. To begin with, the judge found no mitigating factors with respect to the aggravated sexual assault although he did, in respect of the kidnapping charge, find a mitigating factor in the assistance defendant gave the police in their attempt, albeit unsuccessful, to locate Forti. Because the criminal episode here during which the various crimes were committed constituted, in actuality, a single uninterrupted, if protracted, event, we are persuaded that that assistance was a mitigating factor in respect of the entire episode. We are also satisfied that because of defendant's sick young child, the family hardship of lengthy incarceration was also a legitimate mitigating factor.
With respect to the aggravating factors, the judge found that there was a risk of defendant reoffending although he had never before been charged with a crime of that nature, having had one prior unrelated conviction; that there was a need to deter defendant and others; and the gravity of the harm imposed upon the victim, a finding which, in the circumstances, and considering the elements of the crimes, came close to double counting.
Considering the foregoing in the light of NERA's real-time consequences, we are persuaded that a sentence in excess of the presumptive term of fifteen years was unduly harsh and severe, and we exercise our original jurisdiction to modify the first-degree sentence from eighteen years to the presumptive fifteen years subject to NERA.
With respect to defendant's challenge to the consecutive imposition of the first-degree sentence and the sentence for second-degree kidnapping, we have considered the guidelines laid down by the Supreme Court in State v. Yarbough, 100 N.J. 627, 643-644, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). Significantly, these guidelines require the judge to separately state the reasons for imposing a consecutive sentence, considering, among other factors, whether the crimes were independent of each other, if separate acts of violence were involved, if they constituted *559 a single period of aberrant behavior[1] and if multiple victims were involved. As we read the sentencing statement of the judge, there were no specific reasons given for the consecutive sentencing for the second-degree kidnapping and no articulated evaluation of the Yarbough factors. Rather than this court making that evaluation, it is our view that it should be made in the first instance by the trial judge. Accordingly we remand for reconsideration of the consecutive sentencing and a statement of reasons for the decision that takes the relevant factors into consideration.
We remand for modification of the base term on the first-degree sentencing from eighteen years to the presumptive fifteen years and for reconsideration of the consecutive nature of the sentencing for the first and second-degree crimes. In all other respects the judgment of conviction is affirmed. We do not retain jurisdiction.
NOTES
[1] In making that evaluation respecting the factor of a single period of aberrant behavior, the court should consider, even though no merger argument has been raised, that defendant was convicted of first-degree sexual assault committed during the course of a kidnapping and hence that the second-degree kidnapping of which he was also convicted was an element of that offense, a fact which may require merger and, at the least, should affect the concurrency of the sentences.