**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3030-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VINCENT G. SMITH, a/k/a
VINCENT WARNER and
VINCENT GLASCO,

    Defendant-Appellant.

_____

Submitted January 8, 2018 — Decided July 12, 2018

Before Judges O'Connor and Vernoia.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No.
13-12-3157.

Joseph E. Krakora, Public Defender, attorney
for appellant (Daniel V. Gautieri, Assistant
Deputy Public Defender, of counsel and on the
brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Stephen
A. Pogany, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant Vincent Smith appeals his convictions and sentence following a jury trial for aggravated assault and burglary. Based on our review of the record and defendant's arguments under the applicable legal principles, we affirm defendant's convictions, vacate the court's order imposing consecutive sentences and denying defendant an award of jail credits, and remand for reconsideration of the imposition of consecutive sentences and the denial of jail credits.

I.

Defendant was charged in an indictment with second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), third-degree terroristic threats, N.J.S.A. 2C:12-3(a), second-degree burglary, N.J.S.A. 2C:18-2(a)(1), fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d). The court dismissed count two prior to trial.

Co-defendant Shahid Salaam was charged in the indictment with third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count three), and third-degree burglary, N.J.S.A. 2C:18-2 (count five). Salaam pleaded guilty to two criminal charges, a violation of probation on two burglary charges, and a motor vehicle offense. As part of his plea agreement, he agreed to "cooperate in any

future proceedings against" defendant in exchange for the State's recommendation that he receive a time-served sentence.

The evidence at defendant's trial showed that on June 14, 2013, Salaam and defendant went to the former United Hospital, a building in disrepair that was no longer in use. They went to the building to steal copper and brass pipes from its interior because of the metal's resale value.

Salaam had previously entered and stolen scrap metal from the building. He testified that he entered the building through holes he made in windows, and other points of entry and egress in the building, so he could "get out from various positions." He explained the holes had boards placed over them so it appeared there were boarded windows when "it really ain't boarded. You just pull the board up."

The building was protected by a twenty-four hour security force, cameras and no trespassing signs. The security force included armed uniformed guards who had a marked security vehicle. The security force's protocol required that the guards attempt to apprehend anyone found inside the building.

Salaam was aware the building was guarded by a security force, and considered its presence when planning the timing of his attempts to take metal from the building. He would arrange for a

driver and a vehicle to be readily available when he exited the premises.

According to Salaam, one week prior to June 14, 2013, he and defendant entered the building together to steal metal for resale. Salaam used his tools to extract a few hundred dollars worth of metals, and left the metals in bags he and defendant intended to retrieve at a later time. However, Salaam fell asleep in the building, and when he awoke defendant and the bags containing the stolen metal were gone. Salaam believed defendant took the bags and his tools.

By June 14, 2013, Salaam located defendant, who explained the bags had been placed in another location within the building. Defendant agreed to go back to the building with Salaam to retrieve the bags. According to Salaam, he and defendant agreed to go to the building, where he would retrieve the bags with the stolen metals and hand them to defendant as he stood outside of the building. Their plan was that defendant would place the bags in the driver's vehicle, which would then transport defendant and Salaam from the scene. Salaam testified defendant and the driver were going to receive "their rightful share" of the proceeds from the sale of the stolen metals.

In accordance with the plan, on June 14, 2013, Salaam entered the building alone through a boarded hole while defendant remained

outside. Security guard Todd Thompson patrolled the grounds and noticed a truck circling the property. Aware of past break-ins at the building, Thompson positioned himself in front of the building to investigate. At the same time, Kassim Riddick, the head of security from an adjoining property, called Thompson and told him to respond immediately because there were two men inside of the building.

Riddick and Carl Pemberton, an information technology technician for the adjoining property's security cameras, saw defendant outside of the building, and ran after him. Salaam, while still in the building, noticed people pursuing defendant, and told defendant to come inside of the building. Salaam opened a double-door and defendant ran inside.

Once defendant entered the building, Salaam heard someone attempting to pick the lock from the outside and open the door. Salaam told defendant: "[D]on't let none of them grab you. If they try to grab you, you better pick up something and hit one of them upside the head with it."

When Thompson arrived at the building, defendant and Salaam were inside and Riddick and Pemberton were yelling at them through the double-door. Thompson called for backup, and entered the building from another entrance to pursue defendant and Salaam.

When Thompson entered the building, he could be seen by defendant and Salaam. They each took bags containing the stolen metals and ran down a hallway away from Thompson. According to Salaam, he ran ahead of defendant because defendant "was[ not] in that good [] of shape." When Salaam arrived at an exit, he waited for defendant to reach him.

Thompson confronted defendant before defendant reached the exit. Thompson had his gun drawn. Defendant "took a swing at Thompson and it looked like [defendant] swung and swung himself around[.]" Thompson fired his gun and shot defendant in the leg.

When Salaam saw the gun flash, he left the bags, "[j]umped through the makeshift window[,]" and fled the scene, leaving defendant with Thompson, Pemberton, and Riddick. Thompson handcuffed defendant, and called the police and an ambulance.

Defendant did not testify at trial. He presented one witness, Dr. Zhongxue Hua, an expert in forensic pathology. Dr. Hua testified concerning his examination of defendant's gunshot wounds and review of defendant's medical records. He opined that "the gunshot entrance wound was in the back of the thigh," and the exit wound was "in the front of the leg." The testimony supported defendant's argument that he was shot from behind as he fled from Thompson, and was not shot from the front in response to his alleged assault on Thompson.

The jury found defendant guilty of a lesser-included offense under count one of third-degree aggravated assault by attempting to cause significant bodily injury to Thompson, and second-degree burglary as charged in count four. Defendant was found not guilty of the weapons offenses.

The court imposed a four-year year sentence on defendant's conviction for aggravated assault and a concurrent eight-year sentence subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on defendant's second-degree burglary conviction. The court directed that the sentences be served consecutive to a five-year custodial term defendant was serving on an unrelated burglary charge. The court awarded 346 days of gap time credit, but did not award any jail credits. See N.J.S.A. 2C:44-5(b)(2).

Defendant appealed, and offers the following arguments for our consideration.

POINT I

BECAUSE THE CIRCUMSTANCES OF DEFENDANT'S ENTRY INTO THE HOSPITAL BUILDING WERE AMBIGUOUS, THE COURT ERRED IN FAILING TO TAILOR THE BURGLARY CHARGE TO THE CRITICAL ISSUE OF WHETHER THE DEFENDANT ENTERED WITH THE INTENT TO EVADE A POSSIBLE ASSAULT BY HIS PURSUERS OR WITH THE INTENT TO COMMIT AN OFFENSE. THE FLAWS IN THE CHARGE WERE COMPOUNDED BY THE ACCOMPLICE CHARGE, WHICH OMITTED LANGUAGE STATING THAT THE DEFENDANT'S INTENT MAY HAVE DIFFERED FROM THAT OF HIS CO-DEFENDANT.

A.  The Burglary Charge Was Insufficient, As It Failed to Adequately Focus the Jurors' Attention on [Defendant's] Intent at the Time of His Entry Into the Hospital Building And to Instruct Jurors That There Were Potential Non-Criminal Explanations For His Entry.

B.  The Accomplice Charge Was Inadequate, Because It Omitted the Language Contained in the Model Charge That Explained How [Defendant's] Intent May Have Differed From That of His Co-defendant in a Case Where the Prosecutor Incorrectly Told Jurors in Summation That the Co[-]defendant had the Same Intent.

POINT II

THE PROSECUTOR COMMITTED MISCONDUCT WHEN HE REPEATEDLY AND UNFAIRLY DISPARAGED THE DEFENSE FORENSIC EXPERT AND BOLSTERED THE CREDIBILITY OF THE STATE'S WITNESSES IN A CASE WHERE THE CREDIBILITY OF THE WITNESSES WAS ESSENTIAL TO THE ISSUES OF AGGRAVATED ASSAULT AND SECOND-DEGREE BURGLARY.

POINT III

THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT FAILED TO PROVIDE ANY REASONS FOR RUNNING THE SENTENCE CONSECUTIVE TO THE ONE [DEFENDANT] WAS ALREADY SERVING, AND THE COURT FAILED TO AWARD PROPER JAIL CREDIT.

II.

Defendant contends he was deprived of a fair trial and due process because the court erred in its jury instructions on burglary and accomplice liability. He first claims the court failed to instruct the jury with particularity concerning

defendant's intent at the time he entered the building, and should have instructed the jury to consider evidence showing a possible non-criminal purpose for his entry into the building — to protect himself from physical harm from Pemberton and Riddick's pursuit. He also claims the court erred by failing to include in the charge on accomplice liability an instruction that defendant's intent may have differed from Salaam's.

"[A]ppropriate and proper charges [to a jury] are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (first alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). A trial court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party." Id. at 159 (alteration in original) (quoting Reddish, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

We consider each of the alleged errors under the plain error standard, R. 2:10-2, because defendant did not object at trial to the jury charges. Under the plain error standard, defendant must demonstrate the alleged errors were "clearly capable of producing

an unjust result." R. 2:10-2. In the context of a jury charge, plain error is a "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)). We consider the jury instructions "as a whole" to determine if an error constitutes plain error. State v. Brown, 190 N.J. 144, 160 (2007) (quoting State v. Torres, 183 N.J. 554, 564 (2005)). Where, as here, there was no objection to the charges, "there is a presumption that [a] charge was not [in] error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)).

A.

We first consider defendant's claim the court erred by failing to sua sponte advise the jury during the burglary instruction that defendant was entitled to an acquittal if it determined defendant entered the building to protect himself from Pemberton or Riddick or to visit a then-operating business within the building. Defendant contends the evidence supported such a charge, and the court erred by failing to tailor the jury instruction based on the

evidence as required under State v. Robinson, 289 N.J. Super. 447, 449-50 (App. Div. 1996). We are not persuaded.

In Robinson, we considered the defendant's challenge to a jury instruction on the offense of burglary that did not "define the specific offense defendant intended to commit after he entered the building." Id. at 455. We held that under the circumstances presented, it was not plain error for the court to fail to identify the specific offense it was alleged defendant intended to commit because "the jury was not confronted by conflicting explanations as to defendant's purpose in entering the building," and the "unequivocal nature of [the defendant's] conduct . . . suggest[ed] only a criminal purpose." Ibid. We held that

> where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so, so long as those circumstances lead inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary.

> Id. at 458 (alteration in original).

In contrast, in State v. Marquez, 277 N.J. Super. 162, 169 (App. Div. 1994), we reversed the defendant's burglary conviction because the circumstances surrounding the defendant's entry into an apartment were ambiguous and, based on the evidence and the

jury charge, it was not possible to determine if the jury convicted the defendant of entering the apartment to commit an offense therein as required under N.J.S.A. 2C:18-2, or for a purpose insufficient to support a burglary conviction.

Here, the court instructed the jury on the charge of burglary in accordance with the model jury instruction, see Model Jury Charge (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18(b))" (rev. March 14, 2016), and also instructed the jury that defendant was charged with burglary as Salaam's accomplice. The court explained that the State alleged defendant was guilty of the burglary committed by Salaam and must find defendant guilty of the offense if the State proved beyond a reasonable doubt that Salaam committed the offense of burglary, and defendant aided Salaam in the planning or commission of the burglary while possessing the same criminal state of mind that is required to prove the offense against Salaam.

The court was not required to modify the burglary instruction to specify that defendant may have had a lawful purpose for entering the building because it was Salaam's entry into the building, and defendant's actions as an accomplice, that supported defendant's burglary conviction. The evidence showed Salaam had only one purpose in entering the building on June 14, 2013: he testified he entered the building to complete the theft of the

pipes he and defendant harvested, but did not remove, one week earlier. The evidence further showed defendant went to the building with Salaam pursuant to their plan to retrieve the stolen pipes from the building's interior, with defendant waiting outside to receive the stolen metal from Salaam and supervise the getaway driver.

The court was not obligated to instruct the jury about alternative purposes for entry into the building because unlike in Marquez, 277 N.J. Super. at 169, the evidence here did not suggest any ambiguity in Salaam's purpose for which defendant was legally responsible because he planned and assisted Salaam in the unlawful entry and theft as an accomplice. The evidence showed Salaam and defendant shared a singular purpose — Salaam's unauthorized entry into the building to commit a theft of the stowed bags of metal. The evidence did not give rise to any ambiguity of purpose and, therefore, it was unnecessary for the court to inform the jury to consider other purported lawful purposes for defendant's entry into the building. See Robinson, 289 N.J. Super. at 458.

Defendant also contends the court erred by omitting language from the model jury charge on accomplice liability that explained a defendant's "responsibility as an accomplice may be equal and the same as [the person] who actually committed the crime[] or

there may be responsibility in a different degree depending on the circumstances as you may find them to be." Defendant further argues the court erred by failing to instruct the jury that if he was found not guilty of acting as Salaam's accomplice on the burglary charge, it could find him guilty as an accomplice on a lesser included offense if he acted as an accomplice with a purpose to commit the lesser included offense. See Model Jury Charge (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6)" (rev. May 22, 1995).

Defendant's arguments are without merit sufficient to warrant a discussion in a written opinion, R. 2:11-3(e)(2), other than to note that the record is bereft of any evidence showing defendant acted with a purpose other than to assist Salaam in the unlawful entry into the building to complete the theft of the metal they unlawfully undertook one week before. See State v. Wilder, 193 N.J. 398, 413-18 (2008) (the trial court has no obligation to provide instructions for which there is no support in the evidence).

## III.

Defendant next argues the prosecutor engaged in prosecutorial misconduct that deprived him of his right to a fair trial. More particularly, he asserts the prosecutor made inappropriate comments and personal attacks during his cross-examination of Dr.

Hua and, during his summation, "repeatedly and ruthlessly attacked" Dr. Hua, demeaned the defense, offered improper opinions concerning witness credibility, and made arguments that were not supported by the evidence.

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)). "Whether particular prosecutorial efforts can be tolerated as vigorous advocacy or must be condemned as misconduct is often a difficult determination to make. In every instance, the performance must be evaluated in the context of the entire trial, the issues presented, and the general approaches employed." State v. Negron, 355 N.J. Super. 556, 576 (App. Div. 2002).

In reviewing a claim of prosecutorial misconduct, we consider: "whether 'timely and proper objections' were raised; whether the offending remarks 'were withdrawn promptly'; . . . whether the trial court struck the remarks and provided appropriate instructions to the jury . . . [and] whether the offending remarks were prompted by comments in the summation of defense counsel."

15

<u>State v. Smith</u>, 212 N.J. 365, 403-04 (2012) (internal citations omitted). Moreover, "[g]enerally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial." <u>State v. R.B.</u>, 183 N.J. 308, 333 (2005) (citation omitted). "Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made," and "deprives the court of the opportunity to take curative action." <u>State v. Timmendequas</u>, 161 N.J. 515, 576 (1999) (citations omitted).

In addition, even if the prosecutor exceeds the bounds of proper conduct, "[a] finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" <u>State v. Smith</u>, 167 N.J. 158, 181 (2001) (quoting <u>State v. Frost</u>, 158 N.J. 76, 83 (1999)). "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense." <u>State v. Nelson</u>, 173 N.J. 417, 460 (2002) (alterations in original) (quoting <u>State v. Papasavvas</u>, 163 N.J. 565, 625 (2000)).

Our review of the record shows that the prosecutor conducted an intense and relentless cross-examination of Dr. Hua, and

16                                    A-3030-15T1

challenged Dr. Hua's consideration of the evidence related to defendant's injuries, his ability to make the observations upon which his opinion was based, the thoroughness of his review of the relevant medical records and the comprehensiveness of his report. Although the prosecutor asked what might be properly characterized as boorish and snide comments about Dr. Hua's vision based on his testimony that he needed glasses to drive an automobile, the questions directly challenged Dr. Hua's credibility. Dr. Hua testified his opinion was based in part on his visual examination of defendant's wound sites, and thus his ability to accurately observe the sites was an appropriate subject of cross-examination. Similarly, the prosecutor questioned the credibility and comprehensiveness of Dr. Hua's report by pointing out, in a clearly sarcastic manner, that the doctor may not have reviewed all of the pertinent medical records and that his curriculum vitae was longer than his report concerning defendant's injuries.

Prosecutors "may 'strike hard blows . . . [but not] foul ones.'" State v. Echols, 199 N.J. 344, 359 (2009) (alteration in original) (quoting State v. Wakefield, 190 N.J. 397, 436 (2007)). Although the tone of some of the cross-examination questions posed by the prosecutor was harsh and shrouded with sarcasm, we are not convinced the questions were "clearly and unmistakably improper." Nelson, 173 N.J. at 460. To the contrary, they directly pertained

to legitimate subjects for cross-examination — Dr. Hua's credibility and the thoroughness of his analysis and medical report. Moreover, defense counsel did not perceive the questions to be prejudicial — he did not interpose an objection at the time, see Timmendequas, 161 N.J. at 576, and defendant makes no showing that the questions, even if improper, substantially prejudiced his right to have a jury fairly evaluate the merits of his defense, see Nelson, 173 N.J. at 460.

Defendant also argues that the prosecutor committed prosecutorial misconduct by making improper attacks upon Dr. Hua during his summation. "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. Cordero, 438 N.J. Super. 472, 489-90 (App. Div. 2014) (quoting Frost, 158 N.J. at 82). "[I]n the prosecutor's effort to see that justice is done, the prosecutor 'should not make inaccurate legal or factual assertions during a trial.'" State v. Bradshaw, 195 N.J. 493, 510 (2008) (quoting Frost, 158 N.J. at 85). "Rather, a prosecutor should 'confine [his or her] comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence.'" Ibid. (alteration in original) (quoting Smith, 167 N.J. at 178).

"Summation commentary, however, must be based in truth, and counsel may not 'misstate the evidence nor distort the factual picture.'" Adelson, 187 N.J. at 431 (citation omitted). Prosecutors are afforded significant freedom as long as the commentary is reasonably related to the evidence before the jury. State v. Harris, 141 N.J. 525, 559 (1995). In fact, in a criminal case, a prosecutor is entitled and expected to make his closing arguments vigorously and forcefully. Frost, 158 N.J. at 82; Harris, 141 N.J. at 559.

Here, during his summation the prosecutor commented twice on Dr. Hua's examination of defendant's gunshot wound as insufficient, sarcastically stating that Dr. Hua underwent "an extra five, six year[s] of education so that he can look at an external wound on an eye test[,]" and observing that Dr. Hua conducted a visual examination of defendant's wounds but the jurors' "eyes are just as good as his. By the way your eyes are better than his. He doesn't — he can't even drive on the road, but that's what he's relying on." The prosecutor twice remarked on the length of Dr. Hua's report stating: "I was not going to let him skate through with a report less than 500 pages[,]" and that Dr. Hua "submit[ted] a report of one and a half pages, half the length of his CV."

19

While we may not admire the tone of the prosecutor's summation, we find nothing improper in these comments. Each is founded on the evidence presented and supports a permissible argument concerning Dr. Hua's credibility.

The prosecutor, however, crossed the line in certain other statements concerning Dr. Hua during summation. He offered an opinion that Dr. Hua "made a mockery of [the jury's] time," "completely disrespected the entire [judicial] system," and did not "seem to have a moral conscience." A prosecutor cannot properly express a personal belief regarding a witness's truthfulness, State v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993), but that is precisely what the prosecutor did here, see State v. Marshall, 123 N.J. 1, 156 (1991) (finding it proper for a prosecutor to argue that a witness's testimony is credible, but improper to offer an opinion on the witness's credibility); see also State v. Moore, 122 N.J. 420, 461-62 (1991) (holding it was improper for the prosecutor to refer to defense expert as "professional bleeding heart who was indeed duped by the defendant"); Marquez, 277 N.J. Super. at 172 (finding it improper for the prosecutor to comment, without any basis, that the defendant's attorney had scripted the expert witnesses' testimony).

We are not, however, convinced the prosecutor's improper comments deprived defendant of his right to have the jury fairly evaluate the evidence and his defense. Nelson, 173 N.J. at 460. Again, there was no objection to the prosecutor's statements and we therefore deem the statements not to be prejudicial. R.B., 183 N.J. at 333. The court also properly instructed the jury that it was the sole judge of witness credibility, and that counsel's arguments or comments are not evidence. Accordingly, "[w]e assume the jury followed the court's instructions." See State v. Little, 296 N.J. Super. 573, 580 (App. Div. 1997). Moreover, when the prosecutor's brief comments are considered in the context of the evidence presented and the prosecutor's otherwise proper summation, they were not so egregious as to have deprived defendant of a fair trial. Smith, 167 N.J. at 181.

Defendant also points to other comments made by the prosecutor during his summation, and claims they were not based on the evidence presented at trial, improperly bolstered witnesses' credibility, demeaned the defense and misstated the applicable law. We have carefully considered these contentions and they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only that there was no objection to any of the challenged statements, our review of the prosecutor's summation reveals that the challenged statements did not

21

constitute improper argument, and even if the statements were improper, they did not substantially prejudice defendant's right to have a jury fairly evaluate the merits of his defense.  <u>See</u> <u>Nelson</u>, 173 N.J. at 460.

IV.

Defendant also makes two arguments related to his sentencing. He contends the court erred by failing to provide reasons for the imposition of consecutive sentences.  He further asserts the court erred by failing to award jail credits for time he spent in custody following his arrest and prior to his sentencing.  The State agrees with defendant's contentions and to a remand for resentencing to correct the court's errors.

Imposition of consecutive sentences requires the sentencing court's consideration of various factors detailed by the Court in <u>State v. Yarbough</u>, 100 N.J. 627, 643-44 (1985).  It is well-established that a court imposing a consecutive sentence must expressly state the reasons for the sentence or risk remand for resentencing.  <u>State v. Marinez</u>, 370 N.J. Super. 49, 59-60 (App. Div. 2004); <u>see also</u> <u>State v. Miller</u>, 108 N.J. 112, 122 (1987) (remanding because the court did not separately state the reasons for imposing consecutive sentences).

Here, the court's imposition of consecutive sentences is untethered to any analysis of the <u>Yarbough</u> factors or any findings

22

supporting the court's decision. We are therefore constrained to vacate the court's imposition of the consecutive sentences and remand for the court to reconsider whether consecutive sentences are appropriate, and to make the required findings under Yarbough. Marinez, 370 N.J. Super. at 59-60.

We also remand for reconsideration of the award of jail credits. Defendant was not awarded any jail credits by the court, but the State agrees the court erred by failing to award jail credits for the period defendant was in custody following his arrest and prior to his sentencing date. See generally State v. Hernandez, 208 N.J. 24 (2011). We do not have a sufficient record before us to determine defendant's entitlement to jail credits, and remand for the sentencing court to make that determination.

Defendant's convictions are affirmed. We vacate the court's imposition of consecutive sentences and remand for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION