289 N.J. Super. 447 (1996)
673 A.2d 1372
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER ROBINSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1996.
Decided April 18, 1996.
*449 Before Judges PETRELLA, SKILLMAN and EICHEN.
Susan L. Reisner, Public Defender, attorney for appellant (Edward C. Lehman, Designated Counsel, of counsel and on the brief).
Appellant Peter Robinson submitted a supplemental pro se brief.
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Robert H. Corrado, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by EICHEN, J.A.D.
Tried to a jury, defendant Peter Robinson was found guilty of third degree burglary, N.J.S.A. 2C:18-2 (count one) and fourth degree resisting arrest, N.J.S.A. 2C:29-2a(1) (count three). The jury found defendant not guilty of fourth degree aggravated assault, N.J.S.A. 2C:12-1b(5)(a) (count two). Thereafter, the judge found defendant guilty of possession of burglary tools (a screwdriver), a disorderly persons offense, N.J.S.A. 2C:5-5a. At sentencing, the judge granted the State's motion for an extended term and sentenced defendant to a term of nine years with a four-year period of parole ineligibility on the burglary conviction, a concurrent term of eighteen months on the resisting arrest conviction, and a concurrent six-month county jail term on the disorderly persons conviction, pursuant to N.J.S.A. 2C:43-10(b). Appropriate fines and penalties were also assessed.
At the close of the State's evidence, defendant moved unsuccessfully for a judgment of acquittal on all three indictable offenses. Defendant argued that no evidence existed that defendant had the purpose to commit an offense in the structure he was observed *450 entering, "[e]specially in light of the fact ... nothing was taken from anyone." The judge denied the motion, concluding there was sufficient evidence from which a reasonable jury could find defendant guilty of burglary beyond a reasonable doubt.
On appeal from his conviction and sentence, defendant makes the following arguments:
POINT I
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR DISMISSAL OF COUNT I, BURGLARY, BECAUSE THE OFFENSE DEFENDANT INTENDED TO COMMIT WAS NEVER SPECIFIED, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1.
POINT II
THE OUT-OF-COURT IDENTIFICATION BY MARGARITA MARTINEZ WAS UNDULY SUGGESTIVE, AND THE ADMISSION INTO EVIDENCE OF BOTH THE OUT-OF-COURT AND IN-COURT IDENTIFICATIONS VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1. (Not Raised Below)
POINT III
THE TRIAL COURT ERRED IN DOUBLE-COUNTING AGGRAVATING FACTORS BOTH TO RAISE THE PRESUMPTIVE EXTENDED TERM AND IMPOSE A PERIOD OF PAROLE INELIGIBILITY, AND, AS A RESULT, DEFENDANT'S SENTENCE WAS EXCESSIVE.
We find no reversible error in this record and affirm. Nonetheless, we conclude it is appropriate to comment on the issues raised concerning defendant's burglary conviction and his sentence. The argument in Point II is clearly without merit. R. 2:11-3(e)(2).
Defendant's convictions arose out of an incident on March 7, 1994 when he was apprehended following his attempt to climb through a window of a private residence located in the City of Passaic. The house was occupied by two women who were asleep at the time. Defendant did not know them or have their permission to enter. A neighbor, returning from work at about 11:30 p.m., saw two men, one at a time, go behind the house, one of them holding an unidentified object in his hand. As a result, the neighbor became suspicious and called the police. Upon arrival, the police observed one man standing in front of the house, whom they detained, and a second man hanging half in and half out of a *451 first floor window in the rear of the house. When the police yelled, "Stop, police," the man jumped from the window and fled with two officers in pursuit. One of the pursuing officers observed the man throw a red object on the ground. The suspect was apprehended after a short chase, and a red-handled screwdriver was retrieved from the same area where the suspect had been observed discarding an object. According to the police testimony, they never lost sight of the suspect during the chase. He was later identified as defendant. A subsequent investigation disclosed pry marks on the first floor window of the residence.
After defendant's motion for acquittal was denied, defendant testified. He denied he was the person observed attempting to enter the house, and essentially claimed he was in the wrong place at the wrong time, causing the police to mistake him as the perpetrator.
Although the indictment charged defendant with entering a structure with the purpose to commit an offense therein, in his jury instruction at the end of the trial, the judge mistakenly told the jury that the indictment charged defendant "with entering with the purpose to commit a theft," defining burglary for the jury as follows: "A person is guilty of burglary if he enters a structure without permission and with the purpose to commit an offense therein." The judge then defined the term "offense" as "an unlawful act of some kind within that place." The judge also charged the jury that it should consider the lesser included offense of criminal trespass and defined that offense as well. After the judge completed his instructions, the jury retired to deliberate. Neither the State nor defendant took exception to the jury charge; however, shortly after the jury retired to the jury room, the judge brought to counsels' attention the fact that he had mistakenly told the jury that defendant had been charged with entering with the purpose to commit a theft and that he intended to correct this mistaken reading of the indictment by recharging the jury properly. The judge stated to counsel:

*452 My intention would be to simply say to the jury that when I charged them on burglary, I stated that the defendant was charged with the purpose of entering to commit a theft. I was in error when I stated that, he's simply charged with purpose of entering to commit an offense and therefore, they should disregard my statement that he was charged with the purpose to commit a theft.
Neither the assistant prosecutor nor defense counsel objected. In fact, defense counsel responded, "I agree, Judge." The judge then stated,
[I]t was never mentioned again, but I recall having stated that and I think it's incumbent upon this jury not to be under any misconception that the offense has to be a theft.
Once again, defense counsel did not object, whereupon the jury was summoned and the judge explained that
[t]he defendant is charged with entering with the purpose to commit an offense. Not a theft, an offense. And what offense and whether there was an offense is a question for you to determine based on the facts as you have heard them in the testimony in this case.
Defense counsel did not object to the judge's re-instruction.
On appeal, defendant contends the trial judge "erred in denying defendant's motion for dismissal of [the burglary charge] because the offense defendant intended to commit was never specified, in violation of defendant's right to due process of law" under the federal and state constitutions. In addition, defendant raises several related arguments concerning this lack of specificity, all for the first time on appeal, although defendant does not point that problem out in his brief, R. 2:6-2(a)(1). Essentially, he maintains that the judge failed to define as part of the jury instructions the specific offense defendant intended to commit, that identification of the specific offense is an essential element of the offense of burglary, and that the omission amounts to a denial of due process of law. In addition, defendant asserts that the judge's initial mistaken reference to the description of the intended offense in the indictment as theft usurped the jury's factfinding function. Defendant argues that although the judge corrected the misstatement and the jury was told to disregard the reference to theft, "the harm to defendant ... was irremediable."

*453 I.
N.J.S.A. 2C:18-2a(1) defines the offense of burglary, in relevant part, as follows:
A person is guilty of burglary if, with purpose to commit an offense therein he: (1) [e]nters a ... structure ... unless the structure was at the time open to the public or the actor is licensed or privileged to enter.
Burglary is complete upon entry with the purpose of committing an offense. State v. Mangrella, 214 N.J. Super. 437, 441, 519 A.2d 926 (App.Div. 1986), certif. denied 107 N.J. 127, 526 A.2d 194 (1987). To secure a conviction for burglary, the State need not prove that the offense the intruder intended to commit actually took place. Ibid.
The burglary statute speaks of entry "with purpose to commit an offense therein." That phrase has been interpreted broadly to mean "any offense." The 1971 Commentary of the Criminal Law Revision Commission points out that a general criminal intent suffices:

To specify "any offense" comports better with the realities of law enforcement. The burglar is often apprehended, if at all, in the process of entering, when it may be difficult to know more than that he is up to some mischief. Recognition of this is reflected in the rule that the specific criminal purpose need not be pleaded or proved with the same particularity as in prosecuting the crime which the burglar had in mind. If there is reasonable doubt as to the criminal purpose of the intruder, it should be enough to convict him of criminal trespass. Certainly intrusion for such innocent purposes as sleep, escape from inclement weather, or to secure an interview, should not entail the possibility of criminal penalties, based on a presumption of criminal intent. MPC T.D. 11, pp. 60-61 (1960).
[New Jersey Criminal Law Revision Commission, New Jersey Penal Code, Vol. II: Commentary § 2C:18-2, at 211 (1971) (hereinafter 1971 Commentary) (emphasis added).]
See State v. Tassiello, 75 N.J. Super. 1, 182 A.2d 129 (App.Div. 1962), aff'd, 39 N.J. 282, 188 A.2d 406 (1963).
In Tassiello, the defendants were charged with entering a restaurant premises with the intent to steal. Id. at 3, 182 A.2d 129. The State offered no evidence from which it could be inferred that the defendants had committed a theft after they had unlawfully entered restaurant premises after business hours. Id. at 5, 182 A.2d 129. In other words, the defendants were apprehended, *454 as in the instant case, before they were able to commit an unlawful act within the premises. At the close of the State's case on their motion for acquittal, defendants argued that the proofs were insufficient to support an inference that they entered with the intent to steal. Ibid. In rejecting that argument, this court observed:
More often than not intent is determined by the appraisal of human actions in light of the circumstances in which they take place.... Plainly, the inferences to be drawn from the evidence that the defendants returned to the locked and darkened restaurant within minutes after they had left it, and, knowing it to be unattended, then entered it by breaking or otherwise, are inconsistent with lawful conduct. When there was added to this the fact that one man was stationed outside while another entered an open door which had been previously locked, it became legitimately inferable in support of both charges that the role of the former was that of a lookout and that the latter man was admitted by someone already in the building. When, finally, the open window is considered and it is noted that the men inside behind locked doors did not readily respond to the demands of the police that they be admitted, and that upon entering the premises the police found one of them attempting to hide himself from their view, a picture emerges from the totality of proofs which completely justified denial of the motion for acquittal at the end of the State's case.
[Id. at 6, 182 A.2d 129 (emphasis added).]
Likewise in this case, the judge was completely justified in denying defendant's motion for acquittal at the end of the State's case. Defendant was found in the process of entering the structure through a forced window while his accomplice appeared to be acting as a lookout. When the police arrived, defendant fled, tossing a screwdriver that, inferentially, had been used to pry open the window as evidenced by the pry marks. Accordingly, we are satisfied the State's proofs required jury determination, and the judge did not err in denying the motion to dismiss the burglary charge at the close of the State's case. In these circumstances the evidence was sufficient to enable the jury to conclude beyond a reasonable doubt that defendant's purpose in entering the premises was "inconsistent with [any] lawful conduct." See ibid.
Similarly, we are not persuaded the judge erred in the jury instructions by failing to identify the specific offense defendant intended to commit. As earlier noted, this issue was not properly *455 preserved by objection to the judge's charge; nevertheless, we will consider it as a claim of "plain error" in view of defendant's claim that the lack of specificity in the jury charge deprived him of due process of law. R. 2:10-2; see State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
Defendant's defense to the burglary charge was essentially, "I didn't do it; they got the wrong man." Consequently, the jury was not confronted by conflicting explanations as to defendant's purpose in entering the building, some criminal, others noncriminal. Therefore, given the unequivocal nature of his conduct as suggesting only a criminal purpose, the failure to define the specific offense defendant intended to commit after he entered the building does not constitute plain error. We perceive no reasonable basis upon which the jury might have convicted defendant for entering the dwelling with the purpose to engage in lawful activity. Defendant was observed at 11:30 p.m. hanging out of a window in a dwelling that had been forced open. He was a stranger to the occupants. No reasonable jury under these circumstances needed further guidance beyond the judge's definition of an offense as "unlawful conduct."[1] Thus, we hold there was no basis for reversal where the judge below instructed the jury generally that defendant had to have the intent to commit an offense in the dwelling but did not instruct the jury as to any specific offense.
Defendant's reliance on State v. Marquez, 277 N.J. Super. 162, 169, 649 A.2d 114 (App.Div. 1994), certif. denied, 141 N.J. 99, 660 A.2d 1198 (1995), is misplaced. There, we observed only that "mere entry into the apartment in violation of a domestic violence restraining order was itself [not] a sufficient basis to convict [defendant] of burglary" because burglary requires proof of purpose to commit an offense once inside. Id. at 169, 649 A.2d 114. *456 Thus, we set aside the burglary conviction because we could not tell whether the jury had decided defendant was guilty of burglary because he had the purpose to commit one of several offenses after entering or merely because he had committed contempt by violating the restraining order's proscription against entry. See ibid. In other words, the circumstances surrounding defendant's purpose in entering was ambiguous, requiring the reversal.
Further, even analogizing to our decision in State v. Jenkins, 234 N.J. Super. 311, 560 A.2d 1240 (App.Div. 1989), we are not compelled to a contrary conclusion. There, we determined that where "[i]t is impossible to say with any assurance what the jury thought was defendant's unlawful purpose [for possessing a gun]," id. at 315, 560 A.2d 1240, "a jury instruction on a charge of gun possession for unlawful purpose [under N.J.S.A. 2C:39-4a] must include an identification of such unlawful purposes as may be suggested by the evidence," id. at 316, 560 A.2d 1240. In Jenkins, ambiguous circumstances existed concerning defendant's intent in possessing the gun. See id. at 315, 560 A.2d 1240. As such, we determined the jury may have been misled to conclude defendant had an unlawful purpose when he did not. Ibid. In State v. Petties, 139 N.J. 310, 654 A.2d 979 (1995), our Supreme Court agreed, reiterating our observation in Jenkins that "[a] jury is not qualified to say without guidance which purposes for possessing a gun are unlawful and which are not." Id. at 320, 654 A.2d 979 (quoting State v. Jenkins, supra, 234 N.J. Super. at 316, 560 A.2d 1240).
In the instant situation, however, no reasonable jury would have difficulty concluding "without guidance" whether defendant's purpose was to commit "some unlawful act," the specific wrongful act being of no consequence where no innocent purpose is suggested by the evidence. For us to conclude otherwise would allow a burglary, aborted before the commission of the underlying intended offense, to go unpunished, a result we cannot condone. Given the facts and circumstances of this case, we are confident that no reasonable jury would have any problem saying with full assurance *457 that defendant was clearly "up to some mischief." See 1971 Commentary, supra. Our view would be different if the facts presented by the evidence were such that defendant's purpose in entering was unclear and therefore reasonably capable of two interpretations, one criminal and one non-criminal, but that is not the situation here.
Other jurisdictions that have considered the issue agree. In State v. Zayas, 195 Conn. 611, 490 A.2d 68, 72 (1985) the Supreme Court of Connecticut was presented with substantially the same facts as in the instant case and concluded that in the absence of ambiguous circumstances, the failure to specify the crime defendant intended to commit upon entry was not error. In rejecting the defendant's claims, the Supreme Court stated:
Common experience tells us that an unlawful entry into a dwelling at night is not without purpose. Nor are people accustomed to enter homes of strangers through a window for innocent purposes. To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft. The two sets of pry marks on the window sill bespeak criminal purpose. There is no evidence which suggests otherwise. "We cannot ignore the fact that the defendant saw no reason to take exception to an instruction which he now claims is misleading." If the fact pattern, presented by the evidence, was such that it was capable of varying interpretations, some criminal but others noncriminal though perhaps morally offensive, we would find persuasive the defendant's assertion that, by failing to specify the crime or crimes which the evidence suggested, the court impermissibly allowed the jury to define criminal conduct. But on the record before us we cannot conclude that, taken as a whole and specifically related to the facts of this case, the trial court's instructions failed to guide the jury to a clear understanding of the offense.
[Ibid. (citations omitted).]
As earlier noted, that reasoning is persuasive. See also State v. Bergeron, 105 Wash.2d 1, 711 P.2d 1000, 1007, 1009 (1985) (observing the difficulty a trial court would have in instructing a jury as to "all possible crimes, any one of which might have been in the defendant's mind at the time he attempted to enter," and noting "such a plethora of instructions ... [might] simply result in visiting total confusion upon an otherwise uncomplicated case"). Compare People v. Failla, 64 Cal.2d 560, 51 Cal. Rptr. 103, 105-106, 414 P.2d 39, 41-42 (1966) (holding trial court committed plain error in failing to define for jury which acts, if intended by *458 defendant, would transform entry into burglary, but recognizing that a jury instruction that fails to define the specific crime intended as an element of burglary is not error where no ambiguity exists as to the nature of the act defendant might have intended to commit).
In sum, we are persuaded that where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so, so long as those circumstances lead inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary. We also observe that the judge, in instructing the jury on the lesser included offense of criminal trespass, N.J.S.A. 2C:18-3, cautioned the jury that unless the State proved beyond a reasonable doubt that defendant's purpose was to commit an offense, which the judge defined as an unlawful act, it could not convict defendant of burglary. Thus, we are satisfied that defendant was not deprived of due process of law by the failure of the judge to identify a specific offense defendant allegedly intended to commit. Finally, defendant's contention that the judge usurped the jury's factfinding function by his initial description of the charge in the indictment is clearly without merit and does not warrant further discussion. R. 2:11-3(e)(2).

II.
We turn now to defendant's challenge to the sentence imposed as excessive. Defendant concedes he is eligible for extended sentencing. N.J.S.A. 2C:44-3a. Rather, he argues his prior record "does not warrant both a sentence greater than the presumptive extended term and a parole disqualifier." The judge concluded that protection of the public requires imposition of an extended term and a parole disqualifier. The judge then found the need to deter defendant and the risk he will commit another offense strong aggravating factors, relying predominantly on defendant's *459 extensive adult criminal record. The judge found no mitigating factors. After evaluating the aggravating factors and concluding they "substantially overwhelmingly outweigh[ed] the mitigating factors," the judge imposed a term of nine years with a four-year parole disqualifier.
The record reflects that in addition to defendant's adult criminal record (this was defendant's fourth burglary conviction as an adult), he had an extensive juvenile history. Beginning in 1975, defendant was placed on probation several times for committing "[r]obbery, [l]arceny, [and], [b]reak and [e]ntry." After rehabilitative efforts proved unsuccessful, he was committed to the New Jersey Reformatory for Males at Yardville in 1978. But juvenile incarceration did not deter him, and beginning in 1980, defendant was repeatedly convicted in municipal court of property-related offenses. Here too, probation's efforts to rehabilitate him failed. His criminal conduct escalated, and in 1983, defendant was committed to the Department of Corrections for eighteen months on a violation of probation. Shortly after his release, defendant was again convicted of property-related offenses for which he received a split sentence of probation and county jail time. Despite these efforts to rehabilitate him, in 1987 defendant was sentenced to five years in state prison. In 1991, while on parole he committed these offenses.
As our Supreme Court held in State v. Dunbar, 108 N.J. 80, 91, 527 A.2d 1346 (1987), once the decision to impose an extended term had been made, the court's focus should then turn to evaluating the severity of the offense in determining the range of the extended sentence. In this case, the burglary involved forcing a window of an occupied dwelling late at night to gain entry, placing the occupants at serious risk of harm. Thus, the nature of this offense threatened greater harm than, for example, the burglary of an abandoned warehouse. In addition, as instructed by Dunbar, the sentencing court properly considered defendant's extensive juvenile record, his failed efforts at rehabilitation, as well as his violations of probation and parole in increasing the *460 extended term beyond the presumptive seven years and in imposing a period of parole ineligibility. Id. at 92, 94, 527 A.2d 1346. In these circumstances, we are satisfied the sentence does not represent an abuse of discretion. See State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989); State v. Hodge, 95 N.J. 369, 471 A.2d 389 (1984).
Finally, we have carefully reviewed the arguments presented in defendant's pro se appellate brief and conclude that essentially they overlap the issues raised by appellate counsel previously addressed. Therefore, the arguments are without merit and do not warrant further discussion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] The term offense "means a crime, a disorderly persons offense or a petty disorderly persons offense." N.J.S.A. 2C:1-14k.