**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0660-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT A. WATSON, a/k/a BOB
WATSON, MICHAEL THOMPSON,
ROBERT WILLIAMS, MICHAEL
DOWNING, and POOH,

    Defendant-Appellant.

---

Submitted March 4, 2020 – Decided June 17, 2020

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 17-01-0082.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong Vinh Dao, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Danielle R.

Pennino, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Asserting numerous errors, defendant Robert A. Watson appeals his conviction after trial by jury, and the August 29, 2018 sentence. The jury found defendant guilty of third-degree burglary, N.J.S.A. 2C:18-2(a)(1). After denying the State's application for defendant to be sentenced as a persistent offender, N.J.S.A. 2C:44-3(a), the trial judge imposed a five-year term of imprisonment, and appropriate fines and penalties, consecutive to the sentence defendant was already serving. We affirm.

The following circumstances are drawn from the trial record. About six months before the incident, defendant and another visited the home of J.C., to whom defendant was introduced as "Rob." During the visit, he sat on her back porch. J.C.'s ten-year-old daughter E.'s bedroom could be seen from the back porch area.

On September 20, 2016, defendant arrived at J.C.'s house on a bicycle. He asked to sit on her front porch while waiting for a ride, and borrowed a cigarette. Within minutes, J.C. called E. in from the street where she had been playing with friends, so the two could go shopping at a nearby store. J.C. and E. left, and after they arrived at the store, encountered defendant again. He

2

engaged J.C. in conversation, while staring continuously at E. He was not carrying any merchandise.

In the early hours of September 21, E. heard someone enter the window over her bed and fall into it. E. testified she turned on her light, then turned it off and pretended to be asleep, although she was certain there was someone still in the bed with her. The intruder unscrewed the lightbulb from her lamp.

The person who had been in E.'s bed crawled away and stood in a corner of her room, at which point E. said "I know you're still in here." The intruder then headed into the living room through the kitchen. E. followed, noting that the nightlight ordinarily illuminating the kitchen had been turned off. The fan that stood between the kitchen and her room was knocked over.

Because J.C.'s fiancé was asleep in the living room, the would-be burglar turned around and came back. When he did so, E. saw in the illumination from her overhead bedroom light, that the intruder was defendant. He pushed E. out of the way and headed towards the door in the back of the house, which was actually located in E.'s bedroom.

The officer who responded to J.C.'s call told the family he saw no fingerprints and that they should try to get some sleep. The following morning, J.C. saw a handprint clearly visible on the exterior of the window over E.'s bed,

3                                                                          A-0660-18T4

and a chair placed beneath it. She again called police, and this time, a detective retrieved the fingerprints from the glass. Another detective in a follow-up investigation measured the distance from the chair to the window and attempted to get through the window both by jumping and using the chair. A third detective testified as an expert at trial matching the handprint to defendant.

The defense theory was that even if the intruder was defendant, which was disputed, the only crime that individual committed was criminal trespass. See N.J.S.A. 2C:18-3. The jury was presented with that option as a lesser-included offense of the crime of burglary. The judge charged the jury about criminal trespass, placed it as an option on the verdict sheet, and counsel argued the theory in summation. In his report, the first investigating officer, who had been employed with the police department for about a year, stated that he saw no fingerprints the night of the incident, and did not mention that E. identified the intruder as defendant. Defendant called the officer as his witness.

Pre-trial, defendant moved for an order allowing an inspection of the home. Counsel argued that despite being provided photographs depicting the window area, he still lacked sufficient details to effectively dispute the accessibility of the house through the window, and the layout of the house. Acknowledging that the State had provided photographs of the interior as well,

A-0660-18T4

counsel nonetheless argued that the requirements of <u>State in the Interest of A.B.</u>, 219 N.J. 542 (2014), had been met, and that defendant should be allowed to inspect the home. The judge directed the prosecutor and trial counsel to meet and discuss the information defendant specifically sought, and obligated the State to take additional pictures if necessary. The judge said nothing about the <u>A.B.</u> argument, but opined that the prosecutor could provide any necessary information without having to "revictimize these people."

During the trial, defense counsel moved to exclude the State's expert testimony regarding fingerprint evidence. While cross-examining the detective, who was qualified as an expert, trial counsel posed questions regarding a terrorist bombing incident in Spain. The Federal Bureau of Investigations (FBI) assisted with the investigation and recovered a fingerprint from a bag of detonators. The match between that print and a suspect, unfortunately, was mistaken. It included fifteen points of comparison, and was verified "by two seasoned FBI examiners" and an independent court examiner. The detective in this case only examined ten points of comparison.

We describe the prosecutor's closing arguments, which defendant claims were prejudicial statements, as well as the sentence hearing, in the relevant section. On appeal, defendant raises the following issues:

POINT I
THE TRIAL COURT ERRED WHEN IT DENIED MR. WATSON'S MOTION TO INSPECT THE CRIME SCENE.

POINT II
THE STATE COURT ERRED WHEN IT DENIED DEFENSE COUNSEL'S MOTION TO EXCLUDE EVIDENCE RELATED TO LATENT FINGERPRINTS.

POINT III
AS THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT ALL NECESSARY ELEMENTS UNDER THE BURGLARY STATUTE, THE TRIAL COURT WAS WRONG WHEN IT DENIED DEFENSE COUNSEL'S MOTION FOR A DIRECTED VERDICT.

POINT IV
THE ASSISTANT PROSECUTOR'S MISCONDUCT DURING SUMMATION TO SHIFT THE BURDEN OF PROOF TO MR. WATSON AND INFLAME THE JURY WERE PREJUDICIAL AND DENIED HIM A FAIR TRIAL.

POINT V
THE TRIAL COURT'S CUMULATIVE ERRORS DENIED MR. WATSON A FAIR AND RELIABLE TRIAL.

POINT VI
MR. WATSON'S SENTENCE WAS UNFAIR AND MANIFESTLY EXCESSIVE.

A-0660-18T4

## I.

We review a trial court's discovery decisions deferentially. A.B., 219 N.J. at 560. This includes discovery requests for inspections of the premises where crimes occur. As the Court said,

> [W]hen the defense has made a legitimate request to inspect a crime scene that is an alleged victim's home and has articulated a reasonable basis to believe the inspection will lead to relevant evidence on a material issue, then, subject to appropriate time, place, and manner restrictions intended to protect the privacy interests of the alleged victim and her family, the discovery should be granted.
>
> [Id. at 562.]

The State supplied extensive information, including photographs, to defendant in discovery. It was certainly reasonable for defendant to pursue a specific description of the window area, chair placement, and similar details in order to be able to develop a strategy for trial purposes. The record, however, is devoid of any identification of the additional information the State did not supply that would only have been obtained as a result of a home inspection. Thus, the judge's decision to deny the request for inspection was also reasonable, and not an abuse of discretion. The point does not require further discussion. R. 2:11-3(e)(2).

A-0660-18T4

## II.

The admissibility and reliability of fingerprint evidence in this State is of long standing. Trial counsel argued in closing that it was not reliable, and that the jury should consider in evaluating the evidence the example of a systemic failure associated with the Madrid bombing. As she put it in closing, "the system is not infallible." The prosecutor did not object to that argument, which asked the jury to reject the expert's testimony.

The detective was permitted to testify pursuant to N.J.R.E. 702 because his experience and expertise was necessary to explain to the jury the significance of the fingerprint. Fingerprint evidence is clearly the type that requires "scientific, technical, or other specialized knowledge . . . ." N.J.R.E. 702.

In our jurisdiction, it is still the law that "a conviction may be based solely upon fingerprint evidence as long as the attendant circumstances establish that the object upon which the prints are found was generally inaccessible to the defendant and, thus, a jury could rationally find beyond a reasonable doubt such objects had been touched during the commission of the crime." State v. Watson, 224 N.J. Super. 354, 361 (App. Div. 1988).

In this case, the judge allowed expansive cross-examination of the expert and the argument to be made. Ultimately, it fell within the jury's provenance to

8

accept or reject the testimony of the expert witness and assess the weight given to it.  State v. Stubblefield, 450 N.J. Super. 337, 352 n.6 (App. Div. 2017).  In the final analysis, it was unrefuted.  Thus, admission of the fingerprint evidence was not error.

## III.

After the State rested, trial counsel moved for a directed verdict on the theory that the State had proved only criminal trespass and not the charged offense of burglary.  The burglary statute, N.J.S.A. 2C:18-2, requires proof beyond a reasonable doubt not only of unlawful entry, but of the "purpose to commit an offense therein."

The State v. Reyes standard requires a motion for directed verdict to be denied if:

> viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [50 N.J. 454, 458-59 (1967).]

The State can establish sufficient evidence of a purpose to commit an offense merely from the surrounding circumstances.  This is true even if, from the surrounding circumstances, the specific offense defendant intended to

commit is not clear. See State v. Robinson, 289 N.J. Super. 447, 454 (App. Div. 1996). In Robinson, like in this case, the defendant was discovered while entering through the window of a stranger's house at night. Given the time, manner of entry, and what it established about defendant's state of mind and purpose, it sufficed for a burglary conviction. Id. at 455-58. That conviction was affirmed because the intent to commit an offense could be inferred from the time and manner of entry. Ibid.

When counsel moved for a directed verdict, the jury had heard that defendant, identified both by an eyewitness and a fingerprint, entered an acquaintance's home through a window, using a chair to lift himself up to the window height. The time and circumstances of entry clearly established the unlawful purpose. Giving the State all favorable inferences, a reasonable jury could and did find guilt beyond a reasonable doubt.

## IV.

In his closing statement, the prosecutor used two examples of criminal trespass—a sales pitch depicted on a television commercial made by a person found in a homeowner's closet, and Santa Claus. The examples were intended to illuminate a criminal trespass, where no unlawful purpose could be inferred. The argument that these two examples prejudice defendant's right to a fair trial

A-0660-18T4

hinges on the argument that by raising those examples, the State was inviting the jury to speculate about defendant's failure to testify about a benign or neutral purpose for entry. The connection between the two examples and the right to remain silent is itself speculation. This issue is so lacking in merit as to not warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Defendant next contends that the suggestion the prosecutor made in the closing statement, that defendant entered the home in order to have sexual contact with E., was so prejudicial that it was nothing more than a veiled effort to inflame the jury's passions. Counsel did not object. Thus, we employ the plain error rule. R. 2:10-2. Clearly, a prosecutor may not make prejudicial or inflammatory statements regarding the defendant in closing, or urge the jury to draw inferences which are unsupported by the evidence. State v. W.L., 292 N.J. Super. 100, 111 (App. Div. 1996).

But the suggestion was not a per se improper reference to an asserted motive for a crime such as remarks regarding a defendant's financial status. See State v. Terrell, 359 N.J. Super. 241, 247 (App. Div. 2003). The circumstantial evidence the prosecutor described was in the record. The prosecutor first told the jury, as did the court by way of instruction, that the State was required to prove only that defendant had a criminal purpose—and it supported the alleged

11

improper purpose by the manner in which defendant entered the structure, and the events that occurred afterwards. The jury charge explained an improper purpose had to be found to convict defendant of burglary, a very different offense than sexual contact. And the proofs of the burglary were overwhelming.

Furthermore, there was circumstantial evidence supporting the claim that the unlawful purpose involved the child. Defendant's appearance at the house the prior evening was at least, unusual. That he stared incessantly at E. while at the store, also lacks explanation. When defendant pulled himself into the structure through the window, and landed on E.'s bed, the location of which he knew, he did not immediately leave it even though the bed was clearly occupied. He did not use her bedroom only as access to the home, but rather, he unscrewed her lightbulb and did not leave her room until she actually spoke. Under the circumstances, it was proper for the State to argue this particular purpose because of the circumstantial evidence the jury heard.

The State is permitted substantial latitude in argument to the jury. State v. Cole, 229 N.J. 430, 457 (2017). This broad latitude is available where the arguments are anchored in the evidence and any legitimate inferences that can be drawn from it. State v. Smith, 167 N.J. 158, 178 (2001). In this case, the arguments that the State made were certainly anchored in the evidence and

12

intended to refute the defense position essentially of "no harm no foul"—that the entry, if any, was entirely innocent. The nature of the crime—burglary—from the jury's perspective was unchanged no matter whether the purpose was sexual contact, theft, or destruction of property.

## V.

Defendant also contends that the cumulative errors committed warrant reversal. Since we find no error, much less cumulative error, we will not discuss the issue further. See R. 2:11-3(e)(2).

## VI.

Finally, defendant contends his sentence was unfair and manifestly excessive. The court thoughtfully discussed the aggravating and mitigating factors. N.J.S.A. 2C:44-1. The judge detailed defendant's forty-two arrests, including three ordinance violations, eleven disorderly persons convictions, and seventeen indictable crimes. The judge found aggravating factor three—as it was patently obvious that defendant was a person likely to commit additional crimes. The extent of defendant's prior criminal history warranted the court finding aggravating factor six as well. The judge gave both three and six substantial weight, in light of the extensive prior criminal history. With regard

to aggravating factor nine, the court stated that imprisonment was necessary to deter this defendant, who had not been deterred by prior sentences.

The judge found no mitigating factors; the record supported that conclusion as well. Although the judge rejected the State's application for an extended term sentence, he imposed the sentence in this case consecutive to the sentence defendant was then serving. The judge referred to Yarbough principles in doing so because the victims and the crimes in the two cases were entirely separate. State v. Yarbough, 100 N.J. 627, 643-44 (1985).

We review a trial court's sentence only to determine if a defendant has established abuse of discretion. State v. Bolvito, 217 N.J. 221, 228 (2014). The abuse of discretion standard means we affirm unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not based upon competent credible evidence in the record; or (3) the application of the guidelines to the facts of the case shock[s] the judicial conscience." Ibid. (alterations in original) (quotations omitted). The record amply supports the court's findings, and weighing of statutory factors. The sentencing guidelines were not violated. Not only does the sentence not shock the judicial conscience, but seems eminently reasonable to defendant given the State's request for an extended-term sentence. Defendant offers no rationale for

14

the imposition of this sentence concurrent to an entirely unrelated crime—none appears from the record. Therefore, to have made this sentence consecutive to the one defendant was already serving was unobjectionable. Our conscience is not shocked by the five-year term.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0660-18T4