# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4132-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEPHON L. WILSON,

    Defendant-Appellant.

_____

Submitted January 24, 2022 – Decided February 2, 2022

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-12-3438.

Joseph E. Krakora, Public Defender, attorney for appellant (Brian Plunkett, Designated Counsel, on the briefs).

Grace MacAulay, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his convictions for second-degree burglary, N.J.S.A. 2C:18-2(a)(1); first-degree robbery, N.J.S.A. 2C:15-1(a)(2); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2); two counts of third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); two counts of fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); fourth-degree stalking, N.J.S.A. 2C:12-10(b); and fourth-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a). He received an aggregate prison sentence of seventeen and one-half years with thirteen years and seven months of parole ineligibility.

The State produced evidence that defendant had violent encounters with the victim and the victim's family on May 14, May 22, and May 28, 2017. Particularly that defendant stalked the victim and committed the charged offenses. The evidence included testimony from the victim, testimony from witnesses, testimony from law enforcement, surveillance video, and DNA from a knife. Prior to trial, the judge denied defendant's motion to sever the counts in the indictment pertaining to the May 14 and May 28 encounters.[1] The judge

---

[1] On appeal, defendant does not explicitly challenge the judge's discretionary denial of the severance motion.

charged the jury without objection and the jury found defendant guilty on all charges.

On appeal, defendant argues:

POINT [I]

DEFENDANT'S CONVICTONS SHOULD BE REVERSED AND A NEW TRIAL ORDERED BECAUSE THE STATE MISUSED THE STALKING STATUTE BOTH SUBSTANTIVELY AND AS A DEVISE TO OBTAIN A TACTICAL ADVANTAGE.

A. The State Misused N.J.S.A. 2C:12-10(b).

B. The State May Not Charge [A] Certain Offense Solely [T]o Obtain [A] Tactical Advantage.

POINT [II]

THE FAILURE TO CHARGE DIMINISHED CAPACITY WAS REVERSIBLE ERROR BECAUSE THE RECORD CONTAINED SUFFICIENT EVIDENCE OF A MENTAL DISEASE OR DEFECT THAT COULD HAVE NEGATED THE STATE OF MIND REQUIRED FOR THE OFFENSES CHARGED. U.S. CONST. ART. I, [§] 10.

POINT [III]

BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT FACTS AT TRIAL[,] DEFENDANT'S CONVICTION FOR ARMED ROBBERY SHOULD BE VACATED AND A JUDGMENT OF ACQUITTAL ENTERED.

A-4132-18

POINT [IV]

DEFENDANT'S CONVICTION FOR ARMED ROBBERY SHOULD BE VACATED BECAUSE THE TRIAL [JUDGE] FAILED TO FULLY EXPLAIN LEGAL ISSUES CRITICAL TO THE JURY'S DETERMINATION, DEPRIVING DEFENDANT OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.

A. The Trial [Judge's] Instruction Failed [T]o Inform The Jury That [T]o [B]e Guilty [O]f Robbery Defendant Must Have Formed [T]he Intent [T]o Commit Theft Before [A]ny Intimidation [O]f W.K. Occurred.

B. The Trial [Judge] Erred When [He] Failed [T]o Instruct [T]he Jury That [I]t Must Find That Defendant's Purpose [F]or Putting W.K. [I]n Fear [O]f Immediate Bodily Injury [W]as [T]o Coerce Him [I]nto Relinquishing His Phone.

POINT [V]

THE [JUDGE] VIOLATED DEFENDANT'S RIGHT TO A UNANIMOUS VERDICT ON COUNT ONE ARMED BURGLARY WHEN THE JURORS WERE INSTRUCTED THAT EITHER STALKING, CRIMINAL MISCHIEF, AND/OR THEFT COULD BE FOUND AS THE UNLAWFUL PURPOSE FOR DEFENDANT'S ENTRY BUT WERE NOT INSTUCTED THAT THEY MUST UNANIMOUSLY AGREE ON WHICH PURPOSE(S).

POINT [VI]

DEFENDANT SHOULD BE RESENTENCED TO A LOWER AGGREGATE TERM WITH MITIGATING FACTOR FOUR CONSIDERED.

4

We disagree with defendant's contentions and affirm.

I.

In Point I, defendant challenges the State's decision to try defendant for stalking.  He argues the State misused the stalking statute to gain an unfair advantage by rebranding "existing crimes [to] recase its allegations of weapons possession, criminal mischief, and armed robbery into a stalking case."  He contends the State's sole purpose in prosecuting him for stalking was to gain a "tactical advantage" to present "all of its accusations as one 'continuing course of conduct' in a single trial."

The text of the anti-stalking statute is clear and unambiguous.  Defendant has not argued otherwise.  Instead, defendant suggests that under the facts of this case, the State misused the statute to obtain a tactical advantage.  Defendant argues for the first time, without statutory authority, that the scope of the statute is limited to harassing or threatening conduct that occurs before crossing the line to actual violence.  Under N.J.S.A. 2C:12-10(b)

> [a] person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.

5

Under subsection (a), the statute defines its terms:

> (1) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through third parties, by any action, method, device, or means, following, monitoring, observing, surveilling, threatening, or communicating to or about, a person, or interfering with a person's property; repeatedly committing harassment against a person; or repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.
>
> (2) "Repeatedly" means on two or more occasions.
>
> (3) "Emotional distress" means significant mental suffering or distress.
>
> (4) "Cause a reasonable person to fear" means to cause fear which a reasonable victim, similarly situated, would have under the circumstances.

Thus, contrary to defendant's assertion that the statute's scope is limited to situations where there was no actual attack, there is no such limitation expressed in the statute. To conclude otherwise would mean that no one could be charged with stalking once the conduct results in an attack. And if that is the case, stalkers would not be held accountable for stalking when their behavior escalates. Like here, the State properly prosecuted defendant for stalking and the other crimes.

6

The State introduced evidence that defendant stalked the victim on three separate days in May. On May 14, 2017, witnesses observed defendant destroy the windows of the victim's car, which was parked at her mother's house, and then tell the witnesses that "all I want is her" while pointing at the victim. Eight days later, on May 22, defendant returned to the victim's mother's house, broke more windows, and left three red roses behind. On May 28, defendant charged the victim in the morning while she was driving and then broke into her home through a bathroom window. Hearing noise from outside his room, the victim's fourteen-year-old son W.K. called the victim to ask if she was home, and she instructed him to call 911.

Defendant broke into the son's bedroom with a knife and wanted to know when the victim would be home. The victim's mother observed the victim on the phone with the son and watched her leave in a distressed state. The victim's mother called her grandson's phone, and defendant answered. Defendant told the victim's mother, "I'm waiting for your daughter here so I can kill her. And the next one is going to be you." The victim testified that she experienced emotional distress and could not sleep at night. Suffice to say, he repeatedly targeted the victim.

7

In denying defendant's pre-trial motion to sever the first and third incidents, the trial judge concluded that each encounter would have been admissible in separate trials under N.J.R.E. 404(b). The crimes were relevant to defendant's motive and plan to stalk and harass the victim. They were similar in that he smashed windows and threatened the same victim. The State offered overwhelming evidence from witness observations, surveillance footage capturing defendant's behavior, DNA evidence linking defendant to the knife, and in-court and out-of-court identifications. And the probative value was not outweighed by any apparent prejudice, especially because defendant was not deprived of any available defense. Thus, even if joinder was appropriate—which is not the case—the evidence of each encounter between defendant and the victim would have been admissible under N.J.R.E. 404(b).

## II.

The trial judge did not err by denying defendant's late request, near the close of trial, that the judge charge diminished capacity. The record presented no competent evidence of diminished capacity evidencing a mental disease or defect that somehow negated defendant's state of mind to commit the offenses or impact his ability to form the requisite culpability. Contrary to his argument,

A-4132-18

any evidence of defendant's mental health was insufficient to warrant a jury instruction of diminished capacity.

A defendant asserting a diminished capacity defense carries the initial burden of "present[ing] evidence of a mental disease or defect that interferes with cognitive ability sufficient to prevent or interfere with the formation of the requisite intent or mens rea[,]" and "evidence that the claimed deficiency did affect the defendant's cognitive capacity to form the mental state necessary for the commission of the crime." State v. Baum, 224 N.J. 147, 160-61 (2016) (second alteration in original) (quoting State v. Galloway, 133 N.J. 631, 647 (1993)). Although a defendant must initially "introduce evidence of a mental disease or defect tending to show that he or she was incapable of forming the requisite intent, N.J.S.A. 2C:4-2, 'the statute does not shift the burden of proof to the defendant to disprove an essential element of the case.'" Id. at 161 (quoting State v. Moore, 122 N.J. 420, 431 (1991)). Hence, "the burden of proof remains on the State to establish the mens rea of the offense." Ibid. Indeed, N.J.S.A. 2C:4-2 provides:

> [e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense. In the absence of such evidence, it may be presumed that the defendant

A-4132-18

> had no mental disease or defect which would negate a
> state of mind which is an element of the offense.

Without introducing the requisite showing of diminished capacity—through expert testimony or otherwise—defense trial counsel requested the charge at the end of the case, pointing to "behavioral things" like "smiling" and "licking his lips," which were not "typical reactions to a police interview." But defendant produced no competent evidence of mental disease or defect. Rather, the State introduced evidence that defendant knew what he was doing as he pursued the victim at multiple locations. Although defendant behaved strangely, the judge did not abuse his discretion by denying the request.

### III.

In Points III and IV, defendant maintains the State failed to prove that he intended to steal the son's phone when defendant entered the son's bedroom. He argues the judge therefore erred by denying defendant's motion for acquittal after the State rested. And he adds, for the first time,[2] that the judge failed to instruct the jury that defendant must have formed the intent to commit a theft

---

[2] We consider this argument for plain error. R. 2:10-2.

before any "intimidating conduct occurred." The judge correctly denied the Reyes[3] motion and properly charged the jury on robbery.

N.J.S.A. 2C:15-1 sets forth the elements of robbery and the gradation of the offense. A "person is guilty of robbery if, in the course of committing a theft," that individual:

> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>
> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
>
> [N.J.S.A. 2C:15-1(a).]

Robbery is a crime of the first degree if "in the course of committing the theft, . . . the actor is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1(b). Relevant to this case, "the intention to steal must precede or be coterminous with the use of force." State v. Lopez, 187 N.J. 91, 101 (2006).

---

[3] State v. Reyes, 50 N.J. 454 (1967) (setting forth the test for adjudicating a motion for judgment of acquittal).

A-4132-18

The State introduced evidence that defendant's intent to steal the phone was coterminous with defendant putting the son in fear of immediate bodily injury. The son heard defendant going to the bedroom door, and although the son tried to barricade it, defendant broke the door down. The son then observed defendant holding two items: a twelve-inch knife with the blade pointing up, and a bottle of wine. Defendant demanded the son's phone and told the victim's mother, "[O]nce I go after [the victim], I'm going for you next." Defendant fled with the phone and ran from the police.

Our review of a motion for a judgment of acquittal under Rule 3:18-2 is de novo. State v. Lodzinski, ___ N.J. ___ (2021) (slip op. at 40). Defendant's motive for entering the house may have been to target the victim. But, looking at the evidence as we must in the State's favor, defendant formed the intent to steal the son's phone once he barged through the barricaded door and demanded the phone with a knife in hand. And he threatened bodily injury while holding the knife and instilling fear by saying on the phone, "I'm going for you next."

We see no plain error as to the robbery charge. Indeed, when asked whether there where any concerns about the robbery charge, defense counsel said, "No." Defendant now argues the charge was flawed because the judge did not instruct the jury that defendant "must have formed the intent to commit a

theft before any intimidating conduct occurred" and the purpose of putting the son in fear of immediate bodily injury "was to coerce [the son] into relinquishing the phone." Looking at the charge as a whole, and considering the timing of the use of force by holding a raised knife while demanding the phone, we conclude the charge as given was not clearly capable of producing an unjust result.

As part of the robbery charge, the jury asked for the meaning of "with purpose." In responding to the question, the judge and counsel agreed that the judge would re-read the definition of "purposely" in the robbery charge. The judge stated that the State must prove defendant, "while in the course of committing the theft," threatened the son, or it was his conscious object to put the son in fear of immediate bodily injury. This part of the model jury charge was given a second time. The threatening conduct and the theft were coterminous. There was no error.

IV.

Defendant challenges for the first time the final charge on burglary. He contends that the judge failed to instruct the jury that it must unanimously decide which specific unlawful act defendant intended to commit when he broke into the mother's house. But unanimity is not required as to the specific offense

13

defendant intended to commit; only that he intended to commit an unlawful offense.

Here, there was no ambiguity surrounding defendant's purpose for entering the structure. The evidence did not suggest both criminal and non-criminal purposes for entry. Along those lines, the judge instructed the jury that the "[p]urpose to commit an offense inside means that . . . defendant intended to commit an unlawful act inside the structure." The State alleged defendant intended to commit stalking, criminal mischief, and/or theft inside the structure. The parties never introduced evidence that defendant entered the structure for any other purpose. The record demonstrates that defendant had no non-criminal purpose for entering.

As to the obligation to charge unanimity on the purpose for entering the structure, we explained:

> where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so [and] lead inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary.
>
> [State v. Robinson, 289 N.J. Super. 447, 458 (App. Div. 1996).]

"[I]f the facts presented in evidence were such that [the] defendant's purpose in entering was unclear and therefore reasonably capable of two interpretations, one criminal and one non-criminal," then the judge must identify the specific offense. See id. at 457. Thus, under the facts here, the judge had no obligation to consider charging the jury that it must agree on which unlawful act defendant intended to commit inside the structure. Consequently, we see no error, let alone plain error, that is clearly capable of producing an unjust result.

V.

Finally, defendant requests that we remand for re-sentencing, arguing that he should receive a lower sentence with mitigating factor four considered. But the record shows that the judge properly weighed the applicable factors and imposed a lower sentence than requested by the State. The judge considered defense counsel's reliance on defendant's emotional, social, and educational challenges. The judge's findings included consideration of defendant's "young life."

The scope of our review of sentencing determinations is narrow and those decisions are examined under a highly deferential standard. See State v. Roth, 95 N.J. 334, 364-65 (1984) (holding that an appellate court may not overturn a sentence unless "the application of the guidelines to the facts of [the] case makes

the sentence clearly unreasonable so as to shock the judicial conscience"). Our review is limited to considering:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing [judge] were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Liepe, 239 N.J. 359, 371 (2019) (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

"[A]ppellate courts are cautioned not to substitute their judgment for those of our sentencing [judges]." State v. Case, 220 N.J. 49, 65 (2014). A trial judge's exercise of discretion in accordance with sentencing principles "should be immune from second-guessing." State v. Bieniek, 200 N.J. 601, 612 (2010). Sentencing decisions are based on a qualitative rather than quantitative analytical process. State v. L.V., 410 N.J. Super. 90, 108 (App. Div. 2009) (citing State v. Kruse, 105 N.J. 354, 363 (1987)); see also State v. Denmon, 347 N.J. Super. 457, 467-68 (App. Div. 2002) (stating "[o]ur sentencing statute contemplates[, like here,] a thoughtful weighing of the aggravating and mitigating factors, not a mere counting of one against the other"). We will not second guess the judge's findings, which reflect a qualitative analysis.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4132-18